## APPEAL OF WILLIAM H. JACKSON CO.

Docket No. 2662.  Submitted May 26, 1925.  Decided September 7, 1925.

On the evidence, *held,* that the taxpayer has not established the right to a greater credit for good will in invested capital than that allowed by the Commissioner.

*Harold A. Wythes, C. P. A.,* for the taxpayer.
*Ellis W. Manning, Esq.,* for the Commissioner.

### Before IVINS and MORRIS.

This is an appeal from the determination of a deficiency in income and profits taxes for the calendar year 1919 in the amount of $3,-822.49, less overassessments for the eight months' period, May 1 to December 31, 1918, and the calendar year 1920, in the amount of $210.30, a net deficiency of $3,612.19.

The taxpayer alleges three errors of the Commissioner, (1) the exclusion from invested capital of $2,500 in stock of the Ritz-Carlton Hotel Co., Ltd., of Canada; (2) the Commissioner's refusal to accord the taxpayer an adequate allowance in invested capital for good will acquired for stock, and (3) the Commissioner's refusal to allow the taxpayer a similar credit for good will acquired for cash.

FINDINGS OF FACT.

On January 15, 1880, William H. Jackson, Ebenezer C. Jackson, and John Hankinson formed a copartnership under the name of William H. Jackson & Co., to engage in certain metal manufactures. The partnership agreement provided that in the event of its dissolution William H. Jackson should be the liquidating partner and that the "good will" of the partnership would be his property.

Hankinson's death on March 28, 1900, terminated the partnership and William H. Jackson thereupon began its dissolution.

On July 26, 1900, the taxpayer, William H. Jackson Co., was incorporated. The corporation's authorized capital was $250,000, con-

sisting of 2,500 shares, par value $100. The entire capital stock was issued for a consideration of $50,000 in cash and $200,000 representing "good will" of the partnership.

Shortly after the organization of the taxpayer William H. Jackson was succeeded as liquidating partner of the partnership by Frank V. Millard, receiver in liquidation.

On November 1, 1900, William H. Jackson sold to three employees of the taxpayer 2,495 shares of the taxpayer's stock for a consideration of $100,000 in payments extended over a long period of years. This sale was made by Jackson at a time when pending litigation made him deem it wise not to hold the stock in his own name. He sold with the expectation of being able to buy back at the same figure later should he so desire, but when, after the termination of the litigation, he expressed a desire to repurchase, the employees to whom he had sold refused to sell the stock back to him.

Thereafter Frank V. Millard, as receiver in liquidation of the partnership, brought a suit attacking the transfer to the corporation of certain assets, including the good will of the partnership. The taxpayer was a party defendant to this suit.

On December 13, 1905, the taxpayer paid the receiver in liquidation of the old partnership $37,500 and received a bill of sale covering certain tangible articles which were the property of the partnership, though in the taxpayer's possession, and in addition "all the right, title, and interest, if any, of the party of the first part (the receiver) in and to the good will" of the partnership. As a further consideration the receiver's suit against the taxpayer was dismissed. No specific portion of the amount paid was allocated to the "good will" purchased.

In 1914 the taxpayer's authorized capital was increased by $50,000, of which $40,000 was issued for cash. The total capital stock then issued was $290,000.

On April 30, 1906, the taxpayer charged off its books against surplus the $200,000 of "good will" paid in for stock in 1900.

The taxpayer's treatment on its books of the $37,500 payment in 1905 was as follows: $6,733.41 was charged against the merchandise purchased by the transaction, which was on hand at December 13, 1905; $10,000 was charged against patterns, books, designs, etc., these being also purchased by the transaction; $12,489.14 was charged off against surplus, and the remainder, $8,277.45, was charged against merchandise which, although being the property of the partnership, remained in the taxpayer's possession after July 26, 1900, and which had been sold by the taxpayer between that date and December 31, 1905.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be made on consent or on 10 days' notice, under Rule 50.

### OPINION.

IVINS: The parties have agreed that if the Commissioner finds, after investigation in his office, that the Ritz-Carlton Hotel Co., Ltd., of Canada, is a foreign corporation, receiving no part of its income from sources within the United States, the $2,500 in stock of that company held by the taxpayer will be restored to the taxpayer's invested capital.

The taxpayer claims that the good will paid in for $200,000 par value of its stock at organization in 1900 had a value of $212,949.60, but it arrives at this figure through the process of capitalizing earning power in excess of 10 per cent per annum on tangibles during five years subsequent to organization. While earnings subsequent to organization may sometimes constitute corroborative evidence lending support to an appraisal made by reference to facts known or reasonable expectations entertained contemporaneously with or prior to organization, they can not, of themselves, prove value at the time of organization.

There is no evidence of the earning power of the taxpayer's predecessor nor anything more than the payment of $200,000 in stock, to establish the true value of the good will acquired by the taxpayer on July 26, 1900.

The Commissioner has allowed the taxpayer a credit in invested capital for good will of $50,500. This is approximately the difference between the entire amount paid in, in cash in July, 1900, and the value of the stock based on a sale of 2,495 shares for $100,000, four months later, November 1, 1900. The sale in 1900 was not an arm's length transaction and the stock sold may have been worth considerably more than the $100,000 agreed to be paid for it, but the taxpayer has adduced no evidence of that value. We can find nothing in the record upon which to justify allowance of a greater credit on account of good will paid in for stock than that allowed by the Commissioner.

The taxpayer adduced no evidence justifying its attempt to allocate a portion of the $37,500 payment in 1905 to good will. There was, it is admitted, no specific allocation, either in the contract or on the taxpayer's books of any part of the amount paid, to good will. We do not believe that such an allocation can now be made, especially in view of the circumstances surrounding the payment.

On reference to the Board, ARUNDELL took no part in the consideration.